## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE _____, JUDGE

| | | |
|---|---|---|
| CP KELCO US, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Court No. 13-00288 |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) ) ) | |

## COMPLAINT

Plaintiff, CP Kelco US, Inc. ("Plaintiff" or "CP Kelco") by and through its undersigned

attorneys, alleges and states as follows:

## ADMINISTRATIVE DECISION TO BE REVIEWED

1.  This is an appeal from the final determination in the investigation of xanthan gum

from the People's Republic of China for the period of investigation October 1, 2011 through

March 31, 2012.  Commerce's final determination was published in the Federal Register in

*Xanthan Gum from the People's Republic of China: Final Determination of Sales at Less*

*Than Fair Value*, 78 Fed. Reg. 33351 (Dep't of Commerce June 4, 2013), as amended 78

Fed. Reg. 43143 (July 19, 2013).

## JURISDICTION

2.  Plaintiff brings this action pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act

of 1930, 19 U.S.C. §§ 1516a(a)(2)(B)(i). Plaintiff contests Commerce's Final Determination

generally, and specifically as applied to the mandatory respondents involved in the

investigation of xanthan gum from the People's Republic of China (A-570-985).  This Court

has jurisdiction of this action pursuant to 28 U.S.C. § 1581(c).

## STANDING

3.   Plaintiff CP Kelco US, Inc. is a domestic manufacturer of xanthan gum from the

People's Republic of China and was the petitioner in this proceeding. CP Kelco is an

interested party under Sections 516A(f)(3) and 771(9)(C) of the Act, codified at 19 U.S.C.

§§ 1516a(f)(3) and 1677(9)(C), respectively. CP Kelco US, Inc. was a party to the

administrative proceeding from which this matter arises.  Plaintiff therefore has standing to

bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

## TIMELINESS OF THIS ACTION

4.   This complaint is being filed within thirty days of the August 19, 2013 filing of

the summons, which was filed within thirty days after the publication of Commerce's as

amended Final Determination and antidumping order. *Xanthan Gum from the People's*

*Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 Fed. Reg.

33351 (Dep't of Commerce June 4, 2013), as amended in *Xanthan Gum from the People's*

*Republic of China: Amended Final Determination of Sales at Less Than Fair Value and*

*Antidumping Duty Order*, 78 Fed. Reg. 43143 (Dep't of Commerce July 19, 2013). In

accordance with USCIT R. 3(a)(2), 5(e), and 6(a), and pursuant to 19 U.S.C.

§ 1516a(a)(2)(A) and 28 U.S.C. § 2636(c), Plaintiff's complaint is timely because it is being

filed within thirty days of the summons.

## STATEMENT OF FACTS

5.   On June 5, 2012, Plaintiff filed with Commerce a petition requesting that

Commerce initiate an investigation into the importation of xanthan gum at less than fair value

from the People's Republic of China.  Letter from Arent Fox LLP to Hon. John E. Bryson

and Hon. James R. Holbein, Re: Petitions for the Imposition of Antidumping Duties on

Xanthan Gum from the People's Republic of China and Austria (June 5, 2012).

6.   On July 2, 2012, Commerce published its Notice of Initiation of Antidumping

Investigation in the Federal Register. *Xanthan Gum from Austria and the People's Republic*

*of China: Initiation of Antidumping Duty Investigations*, 77 Fed. Reg. 39210 (Dep't of

Commerce, July 2, 2012).

7.   On August 2, 2012, Commerce released a memorandum on respondent selection,

stating that Neimenggu Fufeng Biotechnologies Co., Ltd. (aka Inner Mongolia Fufeng

Biotechnologies Co., Ltd.) ("Fufeng") and Deosen Biochemical Ltd. ("Deosen") were

selected as mandatory respondents for purposes of the investigation. Memorandum from

Abdelali Elouaradia to Christian Marsh, Re: Respondent Selection in the Antidumping Duty

Investigation of Xanthan Gum from the People's Republic of China (Aug. 2, 2012).

8.   Commerce then proceeded with the preliminary phase of the investigation, during

which Plaintiff, Fufeng, and Deosen all made numerous factual submissions.

9.   On November 26, 2012, Plaintiff, Deosen, and Fufeng submitted pre-preliminary

comments to Commerce. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan

Gum from the People's Republic of China: Pre-Preliminary Comments (Nov. 26, 2012)

("Pet. Pre-Prelim. Cmts."); Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Hon.

Rebecca Blank, Re: Deosen Biochemical's Comments for the Preliminary Determination:

Xanthan Gum from China (Nov. 26, 2012); Letter from Grunfeld, Desiderio, Lebowitz,

Silverman, Klestadt LLP, Re: Neimenggu Fufeng Pre-Preliminary Comments in

Antidumping Duty Investigation on Xanthan Gum from the People's Republic of China (A-570-985) (Nov. 26, 2012).

10. In Plaintiff's pre-preliminary comments, Plaintiff argued that Commerce should assign a surrogate value for the source bacteria, *Xanthomonas campestris* ("*X. campestris*"), used by respondents to produce xanthan gum as such constitutes a factor production whose value must be accounted for in order to calculate an accurate normal value. Pet. Pre-Prelim. Cmts., at 7-11. Additionally, Plaintiff argued that Commerce should utilize the intermediate input methodology to value the cornstarch used by Fufeng to produce xanthan gum because simply assigning surrogate values to the individual raw materials alone would significantly understate the normal value of Fufeng's xanthan gum. *Id.* at 13-19.

11. On December 5, 2012, Plaintiff submitted supplemental pre-preliminary comments, further addressing the issue of calculating a surrogate value for *X. campestris*. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Supplemental Pre-Preliminary Comments (Dec. 5, 2012).

12. On December 13, 2012, Deosen filed additional pre-preliminary comments with Commerce, addressing Plaintiff's arguments regarding the valuation of the *X. campestris* used by Deosen to produce the subject merchandise. Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Hon. Rebecca Blank, Re: Deosen Biochemical's Additional Comments for the Preliminary Determination: Xanthan Gum from China (Dec. 13, 2012).

13. On December 14, 2012, Plaintiff responded to Deosen's arguments regarding the valuation of the *X. campestris*, Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Response to Deosen Biochemical's December 13, 2013 Additional Comments for Preliminary Determination (Dec. 14, 2012).

Additionally, on December 14, 2012, Plaintiff filed additional supplemental pre-preliminary comments. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Second Supplemental Pre-Preliminary Comments (Dec. 14, 2012).

14. On January 2, 2013, Plaintiff filed verification comments with Commerce, addressing, among other issues, the valuation of the *X. campestris* bacteria and Fufeng's cornstarch. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Verification Comments (Jan. 2, 2013).

15. On January 7, 2013, Plaintiff filed supplemental pre-verification comments with Commerce, which included information on the valuation of the corn used by Fufeng to produce subject merchandise. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Compendial Standards and Supplemental Verification Comments (Jan. 7, 2013).

16. On January 9, 2013, Plaintiff filed with Commerce additional pre-verification comments, addressing issues relating to Fufeng's cornstarch production. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Supplemental Verification Comments Regarding Neimenggu Fufeng Biotechnologies Co., Ltd. (Jan. 9, 2013).

17. On January 10, 2013, Commerce published its Preliminary Determination in the Federal Register, calculating an antidumping margin of 21.69% for Fufeng and 127.65% for Deosen. *Xanthan Gum from the People's Republic of China: Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 78 Fed. Reg. 2252 (Dep't of Commerce, Jan. 10, 2013) ("Preliminary Determination"). In that Preliminary

Determination, Commerce declined to assign a surrogate value to the *X. campestris* bacteria used to produce xanthan gum, declined to use the intermediate input methodology in order to value Fufeng's cornstarch, and valued Fufeng's corn using Thai import prices for corn that is "fit for animal feed." Memorandum from Brandon Farlander and Erin Kearney to the File, Re: Preliminary Surrogate Value Memorandum (Jan. 3, 2013). Commerce also found that Fufeng was affiliated with Shandong Fufeng Fermentation Co., Ltd. ("Shandong Fufeng") and that the two facilities should be treated as a single entity. Memorandum to Abdelali Elouaradia from Brandon Farlander, Re: Xanthan Gum from the People's Republic of China: Fufeng Affiliation and Collapsing Memorandum (Jan. 3, 2013).

18. On March 12, 2013, Plaintiff, Deosen, and Fufeng all filed case briefs with Commerce, providing comments on how Commerce should proceed with respect to the final determination. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Petitioner's Case Brief (Mar. 12, 2013); Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Hon. Rebecca Blank, Re: Case Brief of Deosen Biochemical and Deosen USA: Xanthan Gum from China (Mar. 12, 2013); Letter from Grunfeld, Desiderio, Lebowitz, Silverman, Klestadt LLP, Re: Neimenggu Fufeng's Administrative Case Brief in Antidumping Duty Investigation on Xanthan Gum from the People's Republic of China (A-570-985) (Mar. 12, 2013).

19. In its case brief, Plaintiff reiterated its arguments that Commerce should assign a surrogate value to the *X. campestris* bacteria consumed in the production of subject merchandise, should utilize the intermediate input methodology for valuing Fufeng's cornstarch, should not use import prices for corn that is fit for animal feed in valuing all of Fufeng's corn inputs, and should increase Fufeng's normal value based on fines warranted

under Thailand's Agricultural Standards Act. Letter from Arent Fox LLP to Hon. Rebecca

Blank, Re: Xanthan Gum from the People's Republic of China: Petitioner's Case Brief (Mar.

12, 2013).

20. On March 19, 2013, Plaintiff and Fufeng submitted their rebuttal case briefs,

addressing the arguments made by the other parties in their initial case briefs. Letter from

Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of

China: Petitioner's Rebuttal Case Brief (Mar. 19, 2013); Letter from Grunfeld, Desiderio,

Lebowitz, Silverman, Klestadt LLP, Re: Neimenggu Fufeng Rebuttal Case Brief in

Antidumping Duty Investigation on Xanthan Gum from the People's Republic of China (A-

570-985) (Mar. 19, 2013). On March 19, 2013, Deosen submitted a rebuttal case, which was

rejected by Commerce. Its resubmitted and amended rebuttal case brief was filed on March

29, 2013. Letter from Curtis, Mallet-Prevost, Colt & Mosle LLP to Hon. Rebecca Blank, Re:

Rebuttal Brief of Deosen Biochemical and Deosen USA: Xanthan Gum from China (Mar.

29, 2013).

21. On June 4, 2013, Commerce published its Final Determination, assigning a

dumping margin for Fufeng of 15.09% and Deosen of 128.32%. *Xanthan Gum from the

People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 Fed.

Reg. 33351, and accompanying Issues and Decision Memorandum (Dep't of Commerce June

4, 2013). In its Final Determination, Commerce again declined to value the *X. campestris*

bacteria used to produce subject merchandise, declined to use the intermediate input

methodology to value Fufeng's cornstarch, valued all of Fufeng's corn using corn import

prices in Thailand for corn that is "fit for animal feed," and declined to increase that

surrogate value based on fines warranted under the Agricultural Standards Act of Thailand. *Id.*

22. On June 4, 2013, Plaintiff submitted comments on ministerial errors contained in Commerce's Final Determination. Letter from Arent Fox LLP to Hon. Rebecca Blank, Re: Xanthan Gum from the People's Republic of China: Petitioner's Ministerial Error Comments (June 4, 2013). In that filing, Plaintiff argued that Commerce had made an error in calculating the energy consumed by Fufeng to produce one kilogram of xanthan gum. Specifically, Commerce allocated the energy consumed at Fufeng to produce subject merchandise across not only Fufeng's actual production but also subject merchandise that was ground and packaged at their affiliated facility, Shangdong Fufeng. *Id.*

23. On June 28, 2013, Commerce released a memorandum responding to the ministerial error allegation and declining to change its calculation methodology. Memorandum from Christian Marsh to Paul Piquado, Re: Final Determination of the Antidumping Duty Investigation of Xanthan Gum from the People's Republic of China: Allegation of Ministerial Errors (June 28, 2013).

24. On July 19, 2013, Commerce published its amended final determination and antidumping duty order against xanthan gum from the People's Republic of China. *Xanthan Gum from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 Fed. Reg. 43143 (Dep't of Commerce, July 19, 2013). Commerce ultimately calculated Fufeng's dumping margin to be 12.90% and Deosen's dumping margin to be 128.32%. *Id.*

INTER/279627.4

## STATEMENT OF CLAIMS

### COUNT I

25. The facts and allegations contained in paragraphs 1 through 24 are restated and incorporated herein by reference.

26. Commerce understated Fufeng's electricity consumption by allocating its electricity consumption over both the xanthan gum actually produced at Fufeng and the xanthan gum only ground and packaged at Fufeng's Shandong facility during the POI. Neimenggu Fufeng was the only Fufeng facility that produced xanthan gum during the POI. By including xanthan gum that was ground and packaged by the Shandong Fufeng facility in the denominator of Neimenggu Fufeng's electricity allocation calculation, the Department significantly understated the amount of electricity that was consumed per kilogram of xanthan gum produced by Fufeng.

27. Commerce's electricity allocation for Fufeng is not supported by substantial evidence and is not otherwise in accordance with law.

### COUNT II

28. The facts and allegations contained in paragraphs 1 through 24 are restated and incorporated herein by reference.

29. Commerce failed to assign a surrogate value to the bacterial strains of *X. campestris* used by respondents to produce subject merchandise. *X. campestris* is the most critical input in the production of xanthan gum and its consumption in the production process must be valued under the statute and relevant regulations. It must also be valued based on past agency practice.

INTER/279627.4

30. Commerce's failure to value *X. campestris* significantly understates Deosen's and Fufeng's dumping margins.

31. Commerce's decision to not value *X. campestris* is not supported by substantial evidence and is not otherwise in accordance with law.

## COUNT III

32. The facts and allegations contained in paragraphs 1 through 24 are restated and incorporated herein by reference.

33. Commerce chose to directly value Fufeng's corn inputs rather than Fufeng's intermediary product, cornstarch. By doing so, Commerce failed to take into account the significant overhead cost and profits associated with Fufeng's corn wet-milling operation. The company selected by Commerce as a source for surrogate financial ratios does not operate a corn wet-milling operation or anything similar, and therefore Commerce failed to capture the associated overhead and profits associated with Fufeng's corn wet-milling operation, thus significantly understating Fufeng's antidumping margin.

34. Commerce's decision to ignore the overhead costs and profits associated with Fufeng's wet-milling operation is unsupported by substantial evidence and is not otherwise in accordance with law.

## COUNT IV

35. The facts and allegations contained in paragraphs 1 through 24 are restated and incorporated herein by reference.

36. Commerce valued all of Fufeng's corn inputs under the Thai HTS subheading 1005.90.90002, which covers corn "fit for animal feed." In doing so, Commerce ignored substantial record evidence that demonstrated Fufeng's corn inputs should not all be valued

as corn "fit for animal feed." Commerce further determined that Fufeng's corn inputs are not

the same as "feed grade corn," but nevertheless continued to assign them a surrogate value

based on Thai imports of corn "fit for animal feed."

37. Commerce's decision to value all of Fufeng's corn under the Thai HTS

subheading for corn "fit for animal feed" is unsupported by substantial record evidence and is

not otherwise in accordance with law.

## COUNT V

38. The facts and allegations contained in paragraphs 1 through 24 are restated and

incorporated herein by reference.

39. Commerce declined to increase the surrogate value assigned to Fufeng's corn

inputs based on fines warranted under Thailand's Agricultural Standards Act.

40. Commerce's decision not to increase the surrogate value for corn used by Fufeng

despite applicable fines warranted under Thailand's Agricultural Standards Act understated

Fufeng's dumping margin and is not supported by substantial record evidence and is not

otherwise is accordance with law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CP Kelco US, Inc. respectfully requests this Court to:

(a)     Hold that Commerce's Final Determination, as amended, is not supported by

        substantial evidence on the record and/or is not in accordance with law;

(b)     Remand the Final Determination to Commerce for a determination consistent with

        the opinion of this Court; and

(c)     Grant such additional relief as the Court may deem just and proper.


                                    **/s/ Nancy A. Noonan**
                                    Matthew J. Clark
                                    Nancy A. Noonan
                                    Matthew L. Kanna
                                    ARENT FOX LLP
                                    1717 K Street, NW
                                    Washington, DC  20036-5342
                                    202.857.6479


                                    *Counsel for CP Kelco US, Inc.*

Dated:  September 18, 2013

INTER/279627.4