

UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, NY 10278-0001

CHAMBERS OF
RICHARD W. GOLDBERG
SENIOR JUDGE

December 1, 2014

Nancy Aileen Noonan, Esq.
Arent Fox LLP
1717 K Street, NW.
Washington, DC 20036-5342

Alexander Orlando Canizares, Esq.
U.S. Department of Justice
Commerical Litigation Branch - National Courts Section
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

Andrew Thomas Schutz, Esq.
Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP
1201 New York Avenue, NW.
Suite 650
Washington, DC 20005

RE:     Questions for Oral Argument: CP Kelco US, Inc. v. United States;
        Court No. 13-00288

Dear Counsel:

        In preparation for oral argument, the court offers a number of questions that the parties
must answer:

1. **Kelco:** Kelco argues that Commerce was wrong to classify X. Campestris as an asset
(accounted for in the surrogate financial ratios) rather than as a factor of production.
Kelco's Br. 8–17; Kelco's Reply 4–11. According to Kelco, treating X. Campestris as an
asset meant leaving its acquisition cost out of the xanthan-gum normal-value calculation
altogether: The Thai Ajinomoto surrogate financial statements did not include analogous
bacteria-acquisition costs. Kelco's Reply 6–7. Kelco argues that this undervaluation
result means Commerce must classify X. Campestris as a factor of production. Would
treating X. Campestris like a normal factor of production (priced according to how much
is consumed in the production process) overvalue it? That is, would bacterial
regeneration offset any depletion, making pricing according to depletion inaccurate?

P. 2

2. **Kelco:** Kelco suggests that the court require Commerce to value X. Campestris by reference to biotechnology licensing agreements. Kelco's Br. 16–17. But, regardless of whether and how Fufeng owns or licenses its X. Campestris, it does not actually pay any ongoing licensing fees to use the bacteria. I&D Memo at 36. Can Kelco offer any past agency practice in support of the notion that Commerce must value X. Campestris as if Fufeng pays to license it, even though Fufeng does not?

3. **Commerce:** Commerce's practice is to "disregard incomplete financial statements . . . where . . . the statement is missing key sections . . . that are vital to [Commerce's] analysis and calculations." *Wooden Bedroom Furniture from the People's Republic of China,* 71 Fed. Reg. 70,739 (Dep't Commerce Dec. 6, 2006) (final admin. review) ("*Wooden Bedroom Furniture*") and accompanying Issues and Decision Mem. at cmt. 2 (internal quotation marks omitted). In its final determination, Commerce rejected the Thai Fermentation financial statements on grounds that they "lack[ed] complete English translations." I&D Memo at 16. But the only untranslated information was depreciation data. Def.'s Br. 17. Commerce has in the past accepted financial statements with no or suspect depreciation information, on grounds that depreciation information is not vital. *Wooden Bedroom Furniture* and accompanying Issues and Decision Mem. at cmt. 2. Given this past approach, can the court conclude that the depreciation data in Thai Fermentation's financial statements was vital?

4. **Commerce:** Kelco objects to Commerce's valuation of the energy used at Fufeng's Neimenggu facility to produce xanthan gum. Kelco's Br. 8–11; Kelco's Reply 1–4. According to Kelco, Commerce miscalculated one of its energy-consumption rates using the total amount of xanthan gum started at Neimenggu—rather than only the amount finished—as the denominator. *See* Kelco's Br. 9. In its reply brief, Kelco argues that Commerce used the amount of xanthan gum started at Neimenggu in no other factor-of-production calculation. Kelco's Reply 4. Why the discrepancy?

Please provide answers to these questions in your prepared remarks, as appropriate.

Sincerely,

/ S /     Richard W. Goldberg
Senior Judge