Slip Op. 16-36

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CP KELCO US, INC.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　　　　　　　　Defendant,<br><br>and<br><br>NEIMENGGU FUFENG BIOTECHNOLOGIES CO., LTD. and SHANDONG FUFENG FERMENTATION, CO., LTD.,<br><br>　　　　　　　　　　　Defendant-Intervenors. | Before: Richard W. Goldberg, Senior Judge<br>Consol. Court No. 13-00288 |

**OPINION**

[Remanding the Department of Commerce's remand redetermination.]

Dated: April 8, 2016

　　　*Matthew L. Kanna*, Arent Fox LLP, of Washington, DC, argued for plaintiff.

　　　*Alexander O. Canizares*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Melissa M. Brewer*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

　　　*Mark E. Pardo*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, argued for defendant-intervenors Neimenggu Fufeng Biotechnologies Co., Ltd. and Shandong Fufeng Fermentation Co., Ltd. With him on the brief were *Andrew T. Schutz*, *Dharmendra Choudhary*, and *Kavita Mohan*.

　　　Goldberg, Senior Judge: This matter returns to the court following a remand of the U.S. Department of Commerce's ("Commerce" or "the agency") final determination in its antidumping investigation of xanthan gum from the People's Republic of China. *Xanthan Gum*

*from the People's Republic of China*, 78 Fed. Reg. 33,351 (Dep't Commerce June 4, 2013) (final determ.) and accompanying Issues & Decision Mem. ("I&D Mem."); *Xanthan Gum from the People's Republic of China*, 78 Fed. Reg. 43,143 (Dep't Commerce July 19, 2013) (am. final determ.). The court remanded to Commerce for reevaluation of two matters. First, at Commerce's request, the court remanded so the agency could revisit how it allocated energy consumed at Fufeng's Neimenggu plant between the production of subject merchandise (i.e. xanthan gum) and nonsubject merchandise. Second, the court remanded so that Commerce could reexamine its conclusion that the Thai Ajinomoto financial statements constituted a better source for calculating surrogate financial ratios than the Thai Fermentation statements. On remand, Commerce adjusted its allocation of energy consumed at the Neimenggu plant but continued to find that the Thai Ajinomoto statements were the better surrogate-ratio source. Final Results of Redetermination Pursuant to Ct. Remand, ECF No. 82 ("Remand Results").

Neither Plaintiff CP Kelco US ("Kelco") nor Defendant-Intervernors Neimenggu Fufeng Biotechnologies, Co., Ltd. and Shandong Fufeng Fermentation Co., Ltd. (collectively, "Fufeng") have filed comments challenging Commerce's new energy allocation. Because the revamped energy allocation complies with the court's remand order, enjoys the support of substantial evidence, and is not contrary to law, the court sustains the Remand Results as they pertain to the energy allocation. *See* Plaintiff Kelco's Comments on Remand Results, ECF No. 85; Def.-Intervenor Fufeng's Comments on Final Results of Redetermination Pursuant to Ct. Order 1, ECF No. 86 ("Fufeng's Comments"). Fufeng has, however, filed comments challenging Commerce's re-endorsed conclusion that the Thai Ajinomoto financial statements are a better surrogate-ratio source than the Thai Fermentation statements. Fufeng's Comments 2–21. The court holds that Commerce's selection of the Thai Ajinomoto statements over the Thai

Fermentation statements is contrary to the court's previous remand instructions and unsupported by substantial evidence. The remedy is a second remand.

## BACKGROUND

As just indicated, the matter up for discussion is Commerce's choice to calculate surrogate financial ratios using Thai Ajinomoto's financial statements instead of Thai Fermentation's. Surrogate financial ratios are one ingredient in Commerce's calculation of the normal value of merchandise produced in a nonmarket-economy country (like Kelco's China-produced xanthan gum). *See* 19 U.S.C. § 1677b(c)(1) (2012); 19 C.F.R. § 351.408 (2015). Commerce begins the normal value calculation by totaling artificial market prices or "surrogate values" of production inputs. In choosing surrogate values, the statute compels Commerce to rely on the "best available information." Once Commerce has selected and totaled the surrogate values, the agency then adds an amount designed to approximate the producing firm's noninput costs of production, which include factory overhead, selling, general, and administrative expenses ("SG&A"), and profit. To incorporate overhead, SG&A, and profit, Commerce looks to the financial statements of other manufacturing firms. As with surrogate values, Commerce must select financial statements based on which provide the "best available information." Commerce generates "surrogate financial ratios" from the financial statements, and factors these ratios with the surrogate-value total to refine the normal value calculation.

In the antidumping investigation underlying this case, Commerce had before it several different sets of financial statements it could select for the surrogate financial ratios. Commerce began the selection process by stating what its criteria were for finding the "best available information." According to Commerce, the considerations included "the availability of contemporaneous financial statements, comparability to the respondent's [production]

experience, and publicly available information." I&D Mem. at 14. First focusing on comparability, Commerce narrowed the field of financial statements to those from companies producing monosodium glutamate, which Commerce "consider[ed] to be comparable merchandise to xanthan gum." *Id.* at 15. This left Commerce with financial statements from This Ajinomoto, Thai Fermentation, and Thai Churos.

Commerce next culled Thai Fermentation's and Thai Churos' statements, not by reason of any of the recited selection criteria, but because they were "both incomplete. Specifically, the financial statements of Thai Churos are missing several footnotes . . . and Thai Fermentation's financial statements lack complete English translations." *Id.* at 16. Although Commerce did not pinpoint the portions of the Thai Fermentation statements that had not been translated, the record shows that they were incomplete insofar as two paragraphs were untranslated at the bottom of accounting note twelve. *See* Pl. Fufeng's Br. in Support of Pls.' Mot. for J. on Agency R. 19–20, ECF No. 26 ("Pl. Fufeng's Br."); Def.'s Resp. to Pls.' Mot. for J. on Agency R. 17, ECF No. 43 ("Gov't Resp. Br.").

Once the Thai Fermentation and Thai Churos statements were discarded, Commerce had only the Thai Ajinimoto statements in hand. But there was a problem with the Thai Ajinomoto statements as well. Those statements showed evidence that Thai Ajinomoto had received countervailable subsidies from the Thai government, and Commerce's "general practice is to disregard [such] financial statements." I&D Mem. at 16. Even so, Commerce chose to accept the Thai Ajinomoto financial statements, noting that "[i]n past cases [Commerce] has relied on statements that included countervailable subsidies when there were no other usable statements on the record." *Id.*

Fufeng appealed to this court, claiming that Commerce's selection of the Thai Ajinomoto statements ran contrary to substantial evidence and the agency's past practice. Fufeng argued that Commerce's two-step analysis—rejecting Thai Fermentation's and Thai Churos' statements for incompleteness, then accepting Thai Ajinomoto's despite evidence of countervailable subsidies because nothing else usable was left on record—effectively ignored the flaws in the Thai Ajinomoto statements. Fufeng also argued that Commerce departed, without explanation, from its past practice of rejecting incomplete financial statements only when the missing information is "vital." Commerce had not found that the paragraphs missing from the Thai Ajinomoto statements included vital information, so rejecting the statements contravened what Fufeng took to be the agency's practice.

The court accepted the first of Fufeng's arguments, but not the second. The court agreed with Fufeng that Commerce, by bifurcating its analysis into two steps, end-ran its obligation to base its decision in substantial evidence. *CP Kelco US, Inc. v. United States* (*Kelco I*), Slip Op. 15-27, 2015 WL 1544714, at *7 (CIT Mar. 31, 2015). Given that both sets of financial statements had different flaws, Commerce "should have compared the two side-by-side." *Id*. Accordingly, the court remanded for Commerce to "explain why, on the whole, the Thai Ajinomoto statements were a better source than the Thai Fermentation statements." *Id*.

But the court did not agree with Fufeng that rejecting Thai Fermentation's incomplete financial statements contravened Commerce's past practice. According to the court,

> Commerce has not bound itself to a practice of *only* rejecting financial statements when they are missing vital information. To be sure, Commerce has occasionally characterized its rule as such—even before this court. *Ass'n of Am. Sch. Paper Suppliers v. United States*, 35 CIT __, __, 791 F. Supp. 2d 1292, 1304 (2011) (recounting Commerce's argument that the agency had the aforementioned past practice, wherein Commerce cited *Galvanized Steel Wire* at 23,551). Notwithstanding these characterizations, the fact remains that Commerce has often rejected incomplete financial statements without finding that the statements lacked

> vital information. *See id.* at __ & n.15, 791 F. Supp. 2d at 1302–03 & n.15 (citing several such instances). These examples show that Commerce does not really reject financial statement[s] as sparingly as Fufeng claims, even though Commerce has sometimes suggested otherwise. And, perhaps precisely for this reason, this court has before declined the invitation to tie Commerce's hands to a practice of rejecting incomplete financial statements only when they lack vital information. *See id.* at 1304 (holding only that Commerce does *not* have a practice of *always* rejecting incomplete financial statements).

*Id.* In sum, the court could not agree with Fufeng that Commerce's practice foreclosed the agency from rejecting the incomplete Thai Fermentation financial statements unless the agency found the missing information to be "vital." Therefore, while Commerce's selection of the Thai Ajinomoto financial statements lacked the support of substantial evidence because Commerce had not compared the Thai Ajinomoto and Thai Fermentation statements side-by-side, past agency practice did not present an additional hurdle.

The court clarified before closing, however, that its holding would not encumber Commerce's concededly established practice of rejecting financial statements when the agency found the statements to be lacking vital information. In the court's words,

> Although Commerce does not have a past practice of *only* rejecting financial statements that are missing key sections of vital information, *see Ass'n of Am. Sch. Paper Suppliers*, 35 CIT at __ & n.15, 791 F. Supp. 2d at 1302 & n.15, Commerce *does* have a past practice of rejecting those statements that *are* missing such information. *Id.*

*Kelco I*, 2015 WL 1544714, at *8 n.7. In line with this practice, one route on remand would be for Commerce to specifically find that the Thai Ajinomoto financial statements were missing vital information, and to reject the statements on that basis. Whether to do that or to instead evaluate the Thai Ajinomoto and Thai Churos statements side-by-side was up to Commerce.

On remand, Commerce again concluded that the Thai Ajinomoto statements provided the "best available information" for calculating surrogate financial ratios. Commerce began with a refurbished explanation of the factors it considers in choosing amongst financial statements.

Case 1:13-cv-00288-RWG   Document 103   Filed 04/08/16   Page 7 of 13

Consol. Court No. 13-00288                                                                                    Page 7

Commerce not only considers contemporaneity, comparability, and public availability (the factors mentioned in the Final Results), but "also looks to see if the potential financial statements are complete and fully translated, free of countervailable subsidies, include a clean audit opinion, and provide sufficient detail for the calculations of overhead, selling, general and administrative expenses ("SG&A") and profit."  Remand Results 8.  But there is no "discrete hierarchy when evaluating these criteria," so if Commerce has before it multiple imperfect sets of statements (such as Thai Ajinomoto's and Thai Churos'), Commerce must "evaluate the deficiencies, and, subsequently, determine which set of financial statements constitutes the most reliable source of data available on the record for purposes of the ratio calculations."  *Id.*

Having rearticulated its criteria, Commerce set about inspecting the Thai Ajinomoto and Thai Fermentation statements.  The agency found the two sets of financial statements to be equally matched on all factors except full translation (which, again, Thai Fermentation lacked) and absence of countervailable subsidies (the feature on which Thai Ajinomoto fell short).  *Id.* at 8–9.  Commerce then offered its reasons for concluding that Thai Fermentation's lack of full translation comprised a "more serious" deficiency than Thai Ajinomoto's evidence of countervailable subsidies.  According to Commerce,

> [The agency] has developed a well-established practice of excluding incomplete financial statements from consideration, whether due to missing information or a lack of full translation.
> The absence of complete financial statements precludes [Commerce], as well as the other parties to a proceeding, from fully evaluating the appropriateness of the financial information set forth in those statements.  Whether completely omitted or left untranslated, the missing information is unavailable for review or comment.  Thus, we and other parties to the proceeding do not know what the missing information might be, and how serious of an impact it might have on [Commerce's] consideration of, and subsequent decision to accept or reject, those financial statements.
> We agree with the Court's directive that [Commerce] is not bound to specifically find that financial statements are missing vital information, and we note that . . . there is no way to tell exactly how vital [missing or untranslated]

> information might be to our determination. Rather, in the case of financial statements, all data and disclosures set forth therein are required by each company's home country generally accepted accounting principles ("GAAP") for the very reason that all such data is vital to the users of those financial statements. . . . The absence of information . . . in a set of financial statements under consideration for use in an antidumping proceeding can render them misleading, and thus unreliable for use in any way.
>     Importantly, because all information in a financial statement is vital and could potentially have a significant impact on the antidumping calculations, allowing parties to decide what information in a financial statement they deem is appropriate to provide in a proceeding might be contrary to certain or all parties' interests. For this very reason, parties cannot be allowed to selectively decide which portions of a financial statement to exclude or include, and which parts of a financial statement to leave untranslated. . . .
>     In contrast to Thai Fermentation's financial statements, although they show evidence of countervailable subsidies, Ajinomoto's financial statements are complete and reliable, and all parties to this proceeding have been afforded the opportunity to comment on their full content. Furthermore, because they are complete, there is no risk that a party to this proceeding has withheld or omitted information from Ajinomoto's financial statements.

*Id.* at 9–11. In short, Commerce selected Thai Ajinomoto's statements over Thai Fermentation's because the agency has a "well-established practice" of rejecting all incomplete financial statements, and Thai Ajinomoto's statements were not incomplete.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court must sustain Commerce's remand redetermination if it is supported by substantial record evidence, is otherwise in accordance with law, and is consistent with the court's remand order. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, Slip Op. 14-55, 2014 WL 2959487, at *2 (CIT May 20, 2014); *see also* 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

In its remand comments, Fufeng continues to dispute Commerce's selection of Thai Ajinomoto's subsidy-affected financial statements over Thai Fermentation's partially untranslated ones. Fufeng offers a number of different arguments, but the court remands without

reaching all of them because Fufeng's first and third arguments in tandem reveal an error in Commerce's work.[1]  Recall, the court instructed Commerce to compare the Thai Ajinomoto and Thai Fermentation financial statements "side-by-side" unless the agency found that past practice warranted rejecting the Thai Fermentation statements out of hand.  On remand, Commerce purported to do both:  Commerce ostensibly compared the financial statements side by side and insisted that it had a past practice of rejecting all incomplete financial statements (including the Thai Fermentation statements).  Taken together, Fufeng's first and third arguments are that the agency did neither.  With Fufeng's third argument, Fufeng says that Commerce did not compare the financial statements side by side.  And Fufeng's first argument is that Commerce did not have a practice of rejecting all incomplete financial statements.  Fufeng is right on both counts.

First, despite Commerce's insistence to the contrary, the agency failed to faithfully compare the financial statements side by side in the remand redetermination.  Instead, the agency loaded the dice against the Thai Fermentation statements.  Commerce lingered for three pages on the usual issues with incomplete financial statements and imputed those issues to the Thai Fermentation statements.  Remand Results 9–11.  Then the agency devoted a single paragraph to why it was accepting the subsidy-affected Thai Ajinomoto statements:  Unlike the Thai Fermentation statements, the Thai Ajinomoto statements were complete and therefore miraculously free of incompleteness-based issues.  *Id.* at 11.  Although Commerce paid lip service to the Thai Ajinomoto statements' evidence of countervailable subsidies, the agency never plumbed the implications as it had plumbed the issues caused by incompleteness.  This was not a faithful side-by-side comparison, because such a comparison requires an evenhanded

---

[1] Fufeng is free to reraise the arguments not addressed by the court at the appropriate juncture.

analysis of both sets of financial statements, complete with an evaluation of the statements' relative strengths and weaknesses.

Second, and again contrary to what Commerce says, the agency does not have a "well-established" practice of rejecting all incomplete financial statements.  If Commerce really had such a practice, then perhaps its abridged discussion of the Thai Fermentation and Thai Ajinomoto statements would have sufficed.  After all, in the preremand opinion the court excused Commerce from methodically comparing the financial statements side by side if the agency could prove that past practice favored rejecting Thai Fermentation's statements more summarily.[2]  But the problem for Commerce is that the agency has no such well-established practice.  To illustrate its purported practice, Commerce cites a slew of past investigations in which the agency rejected incomplete financial statements, in one instance even justifying the rejection by invoking the imprimatur of practice.[3]  These investigations notwithstanding, though, the fact is that Commerce has sometimes accepted partially incomplete financial statements

---

[2] *Kelco I*, 2015 WL 1544714, at *8 n.7 ("Alternatively, if Commerce finds that the Thai Fermentation statements are missing 'vital information,' then Commerce should follow its past practice of rejecting such statements.  (Although Commerce does not have a past practice of *only* rejecting financial statements that are missing key sections of vital information, Commerce *does* have a past practice of rejecting those statements that are missing such information.)" (citations omitted)).

[3] *Certain Steel Nails from the Sultanate of Oman*, 80 Fed. Reg. 28,972 (Dep't Commerce May 20, 2015) (final determ.) and accompanying I&D Mem. at cmt. 1 ("[W]e excluded the financial statements of . . . Sumeeko from consideration due to the fact that they are all only partially translated.  Contrary to [Petitioner's] assertion, [Commerce] does have an established practice of not considering financial statements unless they are completely translated."); *High Pressure Steel Cylinders from the people's Republic of China*, 77 Fed. Reg. 26,739 (Dep't Commerce May 7, 2012) (final determ.) and accompanying I&D Mem. at cmt. 2; *Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof from the People's Republic of China*, 77 Fed. Reg. 14,499 (Dep't Commerce March 12, 2012) (final results admin. review) and accompanying I&D Mem. at cmt. 2; *Seamless Refined Copper Pipe and Tube from the People's Republic of China*, 75 Fed. Reg. 60,725 (Dep't Commerce Oct. 1, 2010) (final determ.) and accompanying I&D Mem. at cmt. 2; *Wire Decking from the People's Republic of China*, 75 Fed. Reg. 32,905 (Dep't Commerce June 10, 2010) (final determ.) and accompanying I&D Mem. at cmt. 2; *Frozen Warmwater Shrimp from the People's Republic of China*, 74 Fed. Reg. 46,565 (Dep't Commerce Sept. 10, 2009) (final results admin. review) and accompanying I&D Mem. at cmt. 1; *Wooden Bedroom Furniture from the People's Republic of China*, 74 Fed. Reg. 41,374 (Dep't Commerce Aug. 17, 2009) (final results admin. review) and accompanying I&D Mem. at cmt. 14; *Wooden Bedroom Furniture from the People's Republic of China*, 71 Fed. Reg. 70,739 (Dep't Commerce Dec. 6, 2006) (final results new shipper review) and accompanying I&D Mem. at cmt. 2.

when the statements still include the data points necessary for (or "vital" to) the agency's calculations.[4] And in *Association of American School Paper Suppliers v. United States*, this court relied on Commerce's representations to hold that the agency even represented to this court that it does not invariably reject incomplete financial statements, but instead looks to whether the missing information is "vitally important." 35 CIT at __, 791 F. Supp. 2d at 1301 (quoting government briefing). Relying in part on this representation, the *American School Paper* court held that "[plaintiff] ha[d] not proven that Commerce has consistently 'reject[ed] financial statements where *any* information is missing, regardless of its nature.'" *Id.* at __, 791 F. Supp. 2d at 1304. In light of Commerce's representation in *American Paper Suppliers* and the ensuing holding, Commerce's current articulation of its practice regarding incomplete financial statements (unconditional rejection) strikes the court as disingenuous. This is all the more so because Commerce insists that it is not today changing, just clarifying, what the agency has done

---

[4] *See, e.g.*, *American School Paper*, 35 CIT at __, 791 F. Supp. 2d at 1298–99 (affirming remand redetermination wherein Commerce determined that "the Sundaram [statements] are 'not so incomplete as to warrant rejection'" because "the Sundaram [statements] contained a director's report, auditor's reports, balance sheet, profit and loss statement, notes, and accounting policies" and "the accounts which are required to calculate surrogate values were included in the Sundaram [statements]" (quoting remand redetermination)); *Helical Spring Lock Washers from the People's Republic of China*, 79 Fed. Reg. 66,356 (Dep't Commerce Nov. 7, 2014) (prelim. determ.) and accompanying Prelim. Decision Mem. at Factor Valuations (accepting Bangkok Fastening financial statements despite nontranslation of final page because the statements were "sufficiently detailed for the purposes of calculating accurate financial ratios"), *unchanged in Helical Spring Lock Washers from the People's Republic of China*, 80 Fed. Reg. 13,833 (Dep't Commerce Mar. 17, 2015) (final determ.) and accompanying I&D Mem. at cmts. 3 & 4; *Galvanized Steel Wire from the People's Republic of China and Mexico*, 76 Fed. Reg. 23,548, 23,551 (Dep't Commerce Apr. 27, 2011) (initiation) (accepting Visakha statement because, although Commerce disregards statements "missing key sections, such as sections of the auditor's report, that are vital to our analysis and calculations . . . the Visakha statement appears to contain all of the essential components of an audited financial statement, and Petitioners have not alleged that any specific material information is missing").

Commerce objects that *American School Paper* and *Galvanized Steel Wire* do not suggest that the agency sometimes accepts partially incomplete financial statements because in those investigations the agency "determined that the submitted financial statements were not actually incomplete." Remand Results 14. The court disagrees with this characterization. In *American Paper Suppliers*, the agency conceded that the relevant financial statements were incomplete, arguing only that they were "'not so incomplete as to warrant rejection.'" 35 CIT at __, 791 F. Supp. 2d at 1298. Likewise, in *Galvanized Steel Wire*, Commerce accepted petitioners' premise that the Visakha statement was incomplete, but rebutted that the statement could nonetheless be accepted because it appeared to contain all "essential" information, and petitioners had failed to allege that any "material information" was missing. In other words, Commerce determined that the Visakha statement included, at minimum, sufficient information for Commerce to calculate overhead, SG&A, and profit. The fact that the Visakha statement featured this "essential" information was enough for Commerce to accept the statement.

in the past. Remand Results 15. In spite of Commerce's argument, then, Commerce does not have a "well-established" practice of excluding financial statements that are incomplete in any regard. And because the Commerce has no such practice, it must comply with this court's main remand instruction to compare the Thai Ajinomoto and Thai Fermentation financial statements side by side in an evenhanded manner, evaluating the relative strengths and weaknesses of each. Because the court designed the remand instruction to endow Commerce's determination with the support of substantial evidence, remanding will also allow the agency to cure the evidentiary defect in its financial-statement selection.[5]

## **CONCLUSION AND ORDER**

For the reasons stated above, the court once again remands Commerce's selection of the Thai Ajinomoto financial statements over the Thai Fermentation financial statements. The court sustains the agency's allocation of energy at Fufeng's Neimenggu plant.

Upon consideration of all papers and proceedings herein, it is hereby:

**ORDERED** that the *Remand Results* are remanded to Commerce for redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce must issue a redetermination ("Remand Redetermination") in accordance with this Opinion and Order that is in all respects supported by substantial evidence, in accordance with law, and supported by adequate reasoning; it is further

**ORDERED** that Commerce shall reevaluate whether the Thai Ajinomoto or Thai Fermentation financial statements constitute the better source for surrogate financial ratios, explicitly comparing the imperfection in the Thai Ajinomoto statements (evidence of subsidies) with that in the Thai Fermentation statements (incompleteness), and shall recalculate the surrogate financial ratios consistent with this decision; it is further

---

[5] As in the preremand opinion, Commerce might alternatively find that the Thai Fermentation statements are missing "vital information." The court has already held that Commerce has a past practice of rejecting such statements (just not a past practice of rejecting *only* such statements). Another prospective alternative would be for Commerce to put its resources towards explaining a change in its practice, from rejecting statements when they are missing vital information (and, outside of this practice, occasionally one-off rejecting statements that are incomplete) to invariably rejecting any incomplete statements.

**ORDERED** that Commerce shall recalculate Fufeng's weighted-average dumping margins consistent with any recalculation of the surrogate financial ratios; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order in which to file its Remand Redetermination, which shall comply with all directives in this Opinion and Order; that the Plaintiff and Defendant-Intervenor shall have thirty (30) days from the filing of the Remand Redetermination in which to file comments thereon; and that the Defendant shall have thirty (30) days from the filing of Plaintiff and Defendant-Intervenor's comments to file comments.

/s/ Richard W. Goldberg  
Richard W. Goldberg  
Senior Judge

Dated: April 8, 2016  
New York, New York