Slip Op. 17-18

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CP KELCO US, INC., <br><br>       Plaintiff, <br><br>v. <br><br>UNITED STATES, <br><br>       Defendant, <br><br>and <br><br>NEIMENGGU FUFENG BIOTECHNOLOGIES CO., LTD. and SHANDONG FUFENG FERMENTATION, CO., LTD., <br><br>      Defendant-Intervenors. | Before: Richard W. Goldberg, Senior Judge <br> Consol. Court No. 13-00288 |

**OPINION AND ORDER**

[Remanding the Department of Commerce's remand redetermination.]

Dated:  February 17, 2017

*Matthew L. Kanna*, Arent Fox LLP, of Washington, DC, for plaintiff.

*Alexander O. Canizares*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.  With him on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director.  Of Counsel on the brief was *Heather N. Doherty*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

*Mark E. Pardo*, *Andrew T. Schutz*, *Dharmendra Choudhary*, and *Brandon Petelin*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, for defendant-intervenors.

  Goldberg, Senior Judge:  This matter returns to the court following a second remand of the final determination of the U.S. Department of Commerce ("Commerce" or "the Department") in its antidumping investigation of xanthan gum from the People's Republic of China.  *Xanthan*

*Gum from the People's Republic of China*, 78 Fed. Reg. 33,351 (Dep't Commerce June 4, 2013) (final determ.) ("*Final Determination*") and accompanying Issues & Decision Mem. ("I&D Mem."); *Xanthan Gum from the People's Republic of China*, 78 Fed. Reg. 43,143 (Dep't Commerce July 19, 2013) (am. final determ.). The two prior opinions of this court more completely set forth the facts underlying this matter. *CP Kelco US, Inc. v. United States*, Slip Op. 15-27, 2015 WL 1544714 (CIT March 31, 2015) ("*CP Kelco I*"); *CP Kelco US, Inc. v. United States*, Slip Op. 16-36, 2016 WL 1403657 (CIT April 8, 2016) ("*CP Kelco II*"). The court presumes familiarity with those opinions and repeats only the facts critical to the disposition of this case. For the reasons discussed below, the court again remands for Commerce to modify or more thoroughly explain its selection of surrogate financial ratio data.

## BACKGROUND

In its *Final Determination*, Commerce concluded that the financial statements of Ajinomoto (Thailand) Co., Ltd. ("Thai Ajinomoto") were a better source for calculating surrogate financial ratios than the statements of Thai Fermentation Industry Ltd. ("Thai Fermentation"). I&D Mem. 14, 16. To arrive at this conclusion, Commerce first disregarded the Thai Fermentation statements on the basis that the record did not contain a full English translation. *Id.* at 16. Commerce did so without making a finding that the untranslated portions were "vital" to Commerce's calculations. *Id.* Commerce then selected the only remaining statements, those of Thai Ajinomoto, despite the fact that the Thai Ajinomoto statements "show evidence of the receipt of countervailable subsidies." *Id.* Defendant-Intervenors Neimenggu Fufeng Biotechnologies, Co., Ltd. and Shandong Fufeng Fermentation Co., Ltd. (collectively, "Fufeng") challenged this determination, arguing that Commerce had failed to justify its disregard of the Thai Fermentation statements. Def.-Intervenor Rule 56.2 Mot. for J. on the

Agency R. 13–21, ECF No. 26 (Mar. 6, 2014). The court agreed and remanded for Commerce to provide a more robust explanation for its choice of financial statements. *CP Kelco I*, 2015 WL 1544714, at *7.

Commerce then submitted its Final Results of Redetermination Pursuant to Court Remand, ECF No. 82 (July 28, 2015) ("*First Remand Results*"). Commerce again chose the Thai Ajinomoto statements over the Thai Fermentation statements, justifying its selection by explaining the issues generally posed by incomplete financial statements. *First Remand Results* 10–12. However, the court again remanded the issue, finding that Commerce still gave short shrift to the issues presented by the countervailable subsidies reflected in the Thai Ajinomoto statements. *CP Kelco II*, 2016 WL 1403657, at *5. Commerce had not conducted an equitable comparison.

The court presented Commerce with three paths it could take in order to render a more reasoned and supported decision. Commerce could "compare the Thai Ajinomoto and Thai Fermentation financial statements side by side in an evenhanded manner, evaluating the relative strengths and weaknesses of each." *Id.* As an alternative, in accordance with past practice, Commerce could "find that the Thai Fermentation statements are missing 'vital information,'" should the record support such a finding. *Id.* at *5 n.5. Finally, the court stated that "[a]nother prospective alternative would be for Commerce to put its resources towards explaining a change in its practice, from rejecting statements when they are missing vital information (and, outside of this practice, occasionally one-off rejecting statements that are incomplete) to invariably rejecting any incomplete statements." *Id.*

Commerce, as it did in its *Final Determination* and *First Remand Results*, has again determined that the Thai Ajinomoto statements are the better surrogate financial ratio source.

Final Results of Redetermination Pursuant to Ct. Order 8, ECF No. 109 (Aug. 22, 2016) ("*Second Remand Results*"). This time, the determination is based on what Commerce concedes is a new practice of "rejecting from use financial statements that are incomplete . . . unless there are no other financial statements left on the record." *Id.* at 7.

Fufeng filed comments challenging Commerce's selection of the Thai Ajinomoto statements. Def.-Intervenor Fufeng Comments on 2nd Final Results of Redetermination Pursuant to Ct. Order, ECF No. 112 (Sept. 21, 2016) ("Fufeng Comments"). Specifically, Fufeng argues that application of Commerce's policy would be improperly retroactive and that Commerce's disregard of the Thai Fermentation statements continues to be contrary to law and lacking the support of substantial evidence. *Id.* at 5, 9.

Although Commerce generally may change its practices and policies, the court finds that the practice Commerce advances here is not reasonable and that it results in an unsupported determination. Therefore, the court again remands for Commerce to modify or more thoroughly explain its selection of surrogate financial ratio data.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court will sustain Commerce's remand redeterminations if they "are supported by substantial evidence, are otherwise in accordance with law" and "are consistent with the court's remand order." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014); *see also* 19 U.S.C. § 1516a(b)(1)(B)(i). Further, in evaluating agency decisions, "[c]ourts look for a reasoned analysis or explanation." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998).

## DISCUSSION

As discussed, the court provided that, among other options, Commerce could "put its resources towards explaining a change in its practice" in order to remedy the lingering deficiencies in the Department's prior remand redetermination.  *CP Kelco II*, 2016 WL 1403657, at *5 n.5.  Commerce elected to proceed under this option.  Commerce first "acknowledge[d] that the Department has not consistently, across all past cases, applied a stated practice of rejecting all 'incomplete' financial statements."  *Second Remand Results* 5.  Commerce then represented that it "intends to follow a practice of rejecting from use financial statements that are incomplete . . . unless there are no other financial statements left on the record."  *Id.* at 7.  Commerce seeks to apply this practice to these proceedings.  *Id.* at 8.  According to Fufeng, this "retroactive application of a new policy is improper."  Fufeng Comments 7.

This Court has recognized that Commerce has discretion to change its policies and practices.  *See Pakfood Pub. Co. v. United States*, 35 CIT __, __, 753 F. Supp. 2d 1334, 1342 (2011) (citing *Nakornthai Strip Mill Pub. Co. v. United States*, 32 CIT 1272, 1276, 587 F. Supp. 2d 1303, 1307 (2008)) *aff'd*, 453 F. App'x 986 (Fed. Cir. 2011).  Moreover, "[c]hanges in methodology . . . permissibly involve retroactive effect."  *Koyo Seiko Co. v. United States*, 31 CIT 1512, 1520, 516 F. Supp. 2d 1323, 1334 (2007).  Therefore, contrary to Fufeng's insistence, there is nothing *per se* inappropriate about Commerce advancing a new practice at this stage in the proceedings.

However, "when an agency departs from its practice, it must 'clearly set forth' the ground 'so that the reviewing court may understand the basis of the agency's action and so may judge the consistency of that action with the agency's mandate.'"  *Hangzhou Spring Washer Co. v. United States,* 29 CIT 657, 667, 387 F. Supp. 2d 1236, 1246 (2005) (quoting *Atchison, Topeka &*

*Santa Fe Ry. Co. v. Wichita Bd. of Trade,* 412 U.S. 800, 808 (1973)). In other words, Commerce may adopt and apply a new practice so long as the practice is "reasonable and consistent with [Commerce's] statutory mandate" and any resulting determinations are "explained and supported by substantial evidence on the record." *Pakfood*, 35 CIT at __, 753 F. Supp. 2d at 1342 (citing another source).

The court finds that Commerce's new policy (I) is not consistent with Commerce's statutory mandate and (II) leads to an unreasoned outcome not supported by the record in these proceedings.

**I.     Commerce's New Policy is Not Consistent with its Statutory Mandate.**

Commerce accepted the court's invitation to put its resources towards explaining and justifying the new practice of "rejecting from use financial statements that are incomplete . . . unless there are no other financial statements left on the record." *Second Remand Results* 7. However, after considering Commerce's explanation, the court is unpersuaded that the new practice squares with the law.

When selecting surrogate financial data to calculate the value of the factors of production, Commerce is required to make use of the "best available information." 19 U.S.C. § 1677b(c)(1); *Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001) ("the critical question is whether the methodology used by Commerce is based on the best available information and establishes the antidumping margins as accurately as possible."). Further, "Commerce has broad discretion to determine what constitutes the best available information." *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014).

Commerce explained that in selecting surrogate financial data, it considers "the availability of contemporaneous financial statements, comparability to the respondent's production experience, and publically available information," as well as whether "the potential statements are complete and fully translated, free of countervailable subsidies, include a clean audit report opinion, and provide sufficient detail" for the relevant calculations. *First Remand Results* 8. Although Commerce has discretion in applying and weighing these factors, the court finds that Commerce's new practice is not reasonably aimed at identifying the best available information or calculating the antidumping margins as accurately as possible. Rather, Commerce appears to seek free reign to disregard what very well could be the "best available evidence" in a given proceeding.

Commerce insists that its new practice "avoids the Department's speculation as to whether the missing information is a 'critical' or 'key' component for the calculation of the surrogate financial ratios." *Second Remand Results* 7–8. Of course, the court has little doubt that the new policy would make Commerce's task an easier one, reducing the need for "speculation." But it is not the job of the court to help smooth Commerce's path if doing so would sanction Commerce's circumvention of its statutory responsibilities. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (an agency's new policy must be "permissible under the statute"). Ultimately, what Commerce terms "speculation" might be better understood as the difficult but nonetheless required analysis of the evidence on the record.

Indeed, Commerce has shown itself readily able to conduct such analyses in prior investigations. *See, e.g.*, *Assoc. of Am. Sch. Paper Suppliers v. Unites States* ("*AASPS*"), 35 CIT __, __, 791 F. Supp. 2d 1292, 1299 (2011). In the *AASPS* proceedings plaintiff argued, and Commerce did not contest, that the financial statements at issue were missing "data required

under Indian law" and "numerous schedules." *Id.* Nevertheless, Commerce deemed the financial statements useful because they "contained a director's report, auditor's reports, balance sheet, profit and loss statement, notes, and accounting policies." *Id.* Commerce defended its selection of incomplete financial statements on the basis that the Department's "primary concern is whether the financial statements contain usable data." *Id.*

A reasoned analysis and substantial evidence can also support Commerce's *rejection* of partially translated financial statements. Commerce has at least two legitimate paths it can take in eliminating such statements from contention. First, consistent with its broad discretion, Commerce may determine, after a reasoned and supported comparison of the available evidence, that the partially translated statements are ultimately inferior to other available data. Commerce may do so without first finding that that the missing information is "vital." *See CP Kelco I*, 2015 WL 1544714, *7.

Second, Commerce can disregard incomplete statements without first comparing and contrasting the strengths and weaknesses of all available data, if the missing information is reasonably deemed vital.[1] The court recently endorsed this practice. *See Mid Continent Steel & Wire, Inc. v. United States*, 41 CIT __, __, Slip Op. 17-5 at 28 (Jan. 26, 2017) (finding that substantial evidence supported Commerce's decision to summarily discard financial statements

---

[1] *See, e.g., Wooden Bedroom Furniture from the People's Republic of China,* 71 Fed. Reg. 70,739 (Dep't Commerce Dec. 6, 2006) (final results) and accompanying Issues & Decisions Mem. at cmt. 2 (citing Department practice of disregarding statements "missing key sections . . . vital to our analysis and calculations" in support of decision to discard financial statements missing "an auditor's report . . . schedules, the auditor's opinions and notes to the financial statements."); *Polyethylene Retail Carrier Bags from the People's Republic of China,* 74 Fed. Reg. 6,857 (Dep't Commerce Feb. 11, 2009) (final results) and accompanying Issues & Decisions Mem. at cmt. 2 ("the missing page(s) likely summarize Polyplast's . . . production, work in progress, waste generation, and plastic consumption. Such information is critical for determining not only whether Polyplast's income comes primarily from its manufacturing operations but also for determining whether Polyplast is a producer of identical merchandise.").

that left untranslated "the audit report . . . as well as several financial statements and all footnotes with the exception of a note related to income taxes," information Commerce had "deemed vital").

In sum, Commerce has exhibited at least three approaches to dealing with incomplete financial statements in prior investigations: (1) evaluate and accept notwithstanding incompleteness, (2) compare with other available data and reject, and (3) determine that missing information is "vital" and reject. This flexible methodology across previous investigations highlights Commerce's ability to apply its expertise to evaluating the record under less than ideal circumstances. And in evaluating the record before it – instead of preemptively discarding evidence – Commerce demonstrates a meaningful effort to identify the "best available information." Commerce has simply not made the case for replacing a flexible, record-driven approach with an unduly rigid, one-size-fits-all practice. *See Fox Television Stations*, 556 U.S. at 515 (stating that an "agency must show that there are good reasons for the new policy").[2]

## II. Commerce's Selection of Surrogate Financial Data is Neither Reasoned Nor Supported by Substantial Evidence.

The facts here deftly illustrate the flaws in Commerce's new practice. Application of the practice to these proceedings results in a determination unaccompanied by a reasoned analysis and unsupported by substantial evidence. This court previously found that the Thai Fermentation statements were fully translated with the exception of "two paragraphs at the bottom of accounting note twelve, concerning depreciation" and that "[a]ccounting note twelve nonetheless contained a fully translated depreciation schedule." *CP Kelco I*, 2015 WL 1544714, at *6.

---

[2] Additionally, each of Commerce's prior practices puts interested parties in a position to challenge whether Commerce's decision in fact enjoys the support of substantial evidence. By contrast, Commerce's new practice would preclude nearly any review of a decision to discard an incomplete financial statement, no matter how reliable or superior that particular statement may otherwise be.

Commerce summarily discarded these statements in favor of the statements of Thai Ajinomoto, a company that apparently receives countervailable subsidies, as Commerce concedes. *Second Remand Results* 8. The court has repeatedly invited Commerce to explain the weaknesses in the Thai Ajinomoto statements and to compare them with the weaknesses of the Thai Fermentation statements. *See, e.g., CP Kelco II*, 2016 WL 1403657, at *5. Commerce declined each invitation. Commerce has yet to provide any discussion of the issues presented by the use of the Thai Ajinomoto statements or, more generally, by the use of financial statements that reflect countervailable subsidies.

     Instead, Commerce merely concluded that, "although they show evidence of countervailable subsidies," the Thai Ajinomoto statements are "complete and reliable" such that "there is no risk that a party to this proceeding has withheld or omitted information from Ajinomoto's financial statements." *First Remand Results* 11. This circular observation tells the court nothing about whether or how countervailable subsidies might render the Thai Ajinomoto statements unreliable or unrepresentative. The court is left with the impression that Commerce may have fashioned an analysis to fit a predetermined preference for the Thai Ajinomoto statements. The court will not characterize such reverse engineering as a reasoned analysis.[3]

---

[3]     Commerce also explained that its "general practice is to disregard financial statements that show a company has received countervailable subsidies" as long as "there are other reliable data on the record." *First Remand Results* 9. This admission is significant for two reasons. First, it makes plain that, in the view of Commerce, countervailable subsidies undermine the reliability of financial data in a manner unrelated to completeness. Yet, to date, Commerce has wholly failed to discuss these reliability concerns in the context of the Thai Ajinomoto statements. Second, while Commerce's general practice concerning countervailable subsidies looks similar to its new policy concerning incomplete statements, the two policies differ in one critical respect. Commerce will admittedly only discard statements showing evidence of countervailing subsidies when there are other *reliable* data on the record. This policy does not conflict with Commerce's duty to select the best available information. By contrast, Commerce's new policy would permit it to discard financial statements that by all metrics are reliable, save for a *de minimus* untranslated portion, in favor of unreliable data. As such, Commerce's new policy is not in harmony with its statutory mandate.

Nor does the court find that Commerce has pointed to substantial evidence in support of its current selection of surrogate financial information. Mirroring its thin discussion of the Thai Ajinomoto statements, Commerce's rejection of the Thai Fermentation statements conspicuously fails to reference the Thai Fermentation statements. Instead, Commerce relies only on general concerns related to incomplete statements, such as the possibility that a party may seek to game the system by submitting selectively translated financial statements. *Second Remand Results* 8. This is, of course, a legitimate concern in the abstract. But unlike in *Mid Continent*, where the statements at issue were missing the audit report, several financial statements, and all but one footnote, 41 CIT at __, Slip Op. 17-5 at 28, here it is not at all clear that those general concerns are raised by a single, partially untranslated footnote concerning depreciation. In other words, Commerce has not marshalled substantial evidence in these proceedings to support reasoning that might be germane to other proceedings. This further underscores the hazard of sanctioning a practice that excuses Commerce from grappling with the record before it.

Thus, Commerce has not met its burden to issue a reasoned and supported determination. *See Goldlink Indus. Co. v. United States*, 30 CIT 616, 619, 431 F. Supp. 2d 1323, 1327 (2006) (the court's duty is "not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information."); *see also Blue Field (Sichuan) Food Indus. Co. v. United States*, 37 CIT __, __, 949 F. Supp. 2d 1311, 1329 (2013) ("Commerce must defend its surrogate choices when the record suggests other data more accurately value . . . inputs."). Accordingly, the court again remands Commerce's selection of surrogate financial data. Specifically, Commerce should not select the Thai Ajinomoto statements unless it first compares the Thai Ajinomoto and Thai Fermentation financial statements side by side in an evenhanded manner, evaluating the relative

strengths and weaknesses of each.  *See CP Kelco I*, 2015 WL 1544714, at *7 ("When presented with multiple imperfect potential surrogate-data sources, Commerce must faithfully compare the strengths and weaknesses of each before deciding which to use.") (citing another source).  In the alternative, Commerce can reject the Thai Fermentation statements after making a reasoned finding that the two untranslated paragraphs in footnote twelve are "vital" to the Department's analysis of the data.  To be clear, the court will not accept the truism that "any missing information may be vital."  *See Second Remand Results* 7.  Rather, under this alternative, Commerce must specifically discuss what is missing from the Thai Fermentation statements and how the fact of the missing information impedes the Department's calculations.

## **CONCLUSION AND ORDER**

For the reasons stated above, the court remands Commerce's selection of surrogate financial data.

Upon consideration of all papers and proceedings herein, it is hereby:

**ORDERED** that the *Second Remand Results* are remanded to Commerce for redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce must issue a redetermination ("Remand Redetermination") in accordance with this Opinion and Order that is in all respects supported by substantial evidence, supported by adequate reasoning, and in accordance with law, including the mandate under 19 U.S.C. § 1677b(c)(1)(B) that Commerce use the "best available information"; it is further

**ORDERED** that Commerce shall reevaluate whether the Thai Ajinomoto or Thai Fermentation financial statements constitute the better source for surrogate financial ratios by either (1) explicitly exploring the relative impact of the imperfection in the Thai Ajinomoto statements (evidence of subsidies) and that in the Thai Fermentation statements (incompleteness) or (2) making a fact-sensitive finding that the Thai Fermentation statements are missing "vital" information; it is further

**ORDERED** that Commerce shall recalculate the surrogate financial ratios consistent with any changes in its selection of financial statements and shall recalculate Fufeng's weighted-average dumping margins consistent with any recalculation of the surrogate financial ratios; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order in which to file its Remand Redetermination, which shall comply with all directives in this Opinion and Order; that the Plaintiff and Defendant-Intervenor shall have thirty (30) days from the filing of the Remand Redetermination in which to file comments thereon; and that the Defendant shall have thirty (30) days from the filing of Plaintiff and Defendant-Intervenor's comments to file comments.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated:  February 17, 2017
New York, New York