Slip Op. 18-36

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CP KELCO US, INC., <br><br>　　　　　　　　　　　Plaintiff, <br><br>v. <br><br>UNITED STATES, <br><br>　　　　　　　　　　　Defendant, <br><br>　and <br><br>NEIMENGGU FUFENG BIOTECHNOLOGIES CO., LTD. and SHANDONG FUFENG FERMENTATION, CO., LTD., <br><br>　　　　　　　　　Defendant-Intervenors. | Before: Richard W. Goldberg, Senior Judge <br> Consol. Court No. 13-00288 |

**OPINION**

[Remanding the Department of Commerce's remand redetermination.]

Dated: April 5, 2018

*Matthew L. Kanna*, Arent Fox LLP, of Washington, D.C., for plaintiff.

*Alexander O. Canizares*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With him on the brief were *Chad A. Readler*, Principal Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director.  Of counsel on the brief was *Brandon J. Custard*, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

*Andrew T. Schutz*, *Ned H. Marshak*, *Dharmendra Choudhary*, and *Brandon Petelin*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., for defendant-intervenors.

　　　Goldberg, Senior Judge:  This matter returns to the court following a third remand of the final determination of the U.S. Department of Commerce ("Commerce" or "the Department") in its antidumping investigation of xanthan gum from the People's Republic of China.  *Xanthan*

*Gum from the People's Republic of China*, 78 Fed. Reg. 33,351 (Dep't Commerce June 4, 2013) (final determ.) ("*Final Determination*") and accompanying Issues & Decision Mem. ("I&D Mem."); *Xanthan Gum from the People's Republic of China*, 78 Fed. Reg. 43,143 (Dep't Commerce July 19, 2013) (am. final determ.). The three prior opinions of this court more thoroughly set forth the facts underlying this appeal. *CP Kelco US, Inc. v. United States*, Slip Op. 15-27, 2015 WL 1544714 (CIT Mar. 31, 2015) ("*CP Kelco I*"); *CP Kelco US, Inc. v. United States*, Slip Op. 16-36, 2016 WL 1403657 (CIT Apr. 8, 2016) ("*CP Kelco II*"); *CP Kelco US, Inc. v. United States*, 41 CIT __, 211 F. Supp. 3d 1338 (2017) ("*CP Kelco III*"). The court presumes familiarity with those opinions and repeats only the facts critical to the disposition of this case. For reasons discussed below, the court again remands to Commerce.

## BACKGROUND

In its *Final Determination*, Commerce concluded that the Thai Ajinomoto financial statements constituted a better source for calculating surrogate financial ratios than the Thai Fermentation financial statements. I&D Mem. cmt. 2. Commerce first disregarded the Thai Fermentation statements on the basis that the record did not contain a full English translation, without making a finding that the untranslated portions were "vital" to Commerce's calculations. *Id.* Commerce then selected the only remaining statements, those of Thai Ajinomoto, despite the fact that the Thai Ajinomoto statements "show evidence of the receipt of countervailable subsidies." *Id.* Defendant-Intervenors Neimenggu Fufeng Biotechnologies, Co., Ltd. and Shandong Fufeng Fermentation Co., Ltd. (collectively, "Fufeng") challenged this determination, arguing that Commerce failed to properly justify its disregard of the Thai Fermentation statements. Def.-Intervenor Rule 56.2 Mot. for J. on the Agency R. 13–22, ECF No. 28 (Mar. 7,

2014). The court agreed, remanding for Commerce to provide a more robust explanation for its choice of financial statements. *CP Kelco I*, 2015 WL 1544714, at *7.

Commerce then submitted its Final Results of Redetermination Pursuant to Court Remand, ECF No. 83 (July 28, 2015) ("First Remand Results"). Commerce again chose the Thai Ajinomoto statements over the Thai Fermentation statements, justifying its selection by explaining the issues presented by the incompleteness of financial statements generally. *Id.* at 10–12. However, the court again remanded the issue, finding that Commerce still gave short shrift to the issues presented by the countervailable subsidies reflected in the Thai Ajinomoto statements. *CP Kelco II*, 2016 WL 1403657, at *5.

The court presented Commerce with three paths it could take in order to render a potentially reasoned and supported decision. Commerce could "compare the Thai Ajinomoto and Thai Fermentation financial statements side by side in an evenhanded manner, evaluating the relative strengths and weaknesses of each." *Id.*. As an alternative, in accordance with past practice, Commerce could "find that the Thai Fermentation statements are missing 'vital information,'" should the record support such a finding. *Id.* at *5 n.5. Finally, the court stated that "[a]nother prospective alternative would be for Commerce to put its resources towards explaining a change in its practice, from rejecting statements when they are missing vital information (and, outside of this practice, occasionally one-off rejecting statements that are incomplete) to invariably rejecting any incomplete statements." *Id.*

Commerce, as it did in its *Final Determination* and in its First Remand Results, again found that the Thai Ajinomoto statements are the better surrogate financial ratio source. Final Results of Redetermination Pursuant to Ct. Order 8, ECF No. 109 (Aug. 22, 2016) ("Second Remand Results"). Commerce based its determination on what it described as a new practice of

"rejecting from use financial statements that are incomplete . . . unless there are no other financial statements left on the record." *Id.* at 7.

The court again remanded, explaining that "the practice Commerce advance[d] [was] not reasonable and that it result[ed] in an unsupported determination." *CP Kelco III*, 41 CIT at __, 211 F. Supp. 3d at 1340. The court gave Commerce the option of doing a faithful comparison of the two statements or of making a "fact-sensitive finding" that the untranslated information in the Thai Fermentation statements was "vital," such that Commerce could not discern the reliability of those statements. *Id.*, 41 CIT at __, 211 F. Supp. 3d at 1345.

Commerce opted for the second alternative, explaining that "Thai Fermentation's financial statements are missing complete translations for two paragraphs of the property plant and equipment (*i.e.*, fixed asset) footnote" which are central to calculating depreciation expense. Final Results of Third Redetermination Pursuant to Ct. Order 7, ECF No. 157 (Sept. 18, 2017) ("Third Remand Results"). Commerce further explained that:

> in the instant proceeding, depreciation expense comprises . . . a majority of the overhead costs for Thai Fermentation. [And] by virtue of comprising all or most of a company's overhead costs, depreciation expense is an integral component of the denominator of the selling, general and administrative (SG&A) expense and profit ratios. Thus, depreciation can significantly impact the surrogate financial ratios . . . .

Third Remand Results at 8 (footnotes omitted). Commerce further provided that "the narrative portions of a company's footnotes can provide vital information regarding asset impairments, changes in useful lives of fixed assets, revaluations of fixed assets and the capitalization of production costs, among other things that are not shown on the numeric fixed asset schedule." *Id.* at 10. To illustrate the kind of "vital" information that could be lurking within the two untranslated paragraphs of a footnote in the Thai Fermentation financial statements, Commerce cited to prior proceedings in which the Department adjusted reported depreciation figures. *Id.* at

9 (citing *Certain Steel Concrete Reinforcing Bars from Turkey*, 71 Fed. Reg. 65,082 (Dep't Commerce Nov. 7, 2006) and accompanying Issues & Decision Mem. cmt. 4; *Certain Preserved Mushrooms from India*, 66 Fed. Reg. 42,507 (Dep't Commerce Aug. 13, 2001) (final results) and accompanying Issues & Decision Mem. cmt. 7; *Certain Cut-To-Length Carbon-Quality Steel Plate Products from Korea*, 64 Fed. Reg. 73,196, 73,205 (Dep't Commerce Dec. 29, 1999) (final determ.)).

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court must sustain Commerce's remand redetermination if it is supported by substantial record evidence, is otherwise in accordance with law, and is consistent with the court's remand order. *See Ad Hoc Shrimp Trade Action Comm. v. United States*, 38 CIT __, __, 992 F. Supp. 2d 1285, 1290 (2014); *see also* 19 U.S.C. § 1516a(b)(1)(B)(i). "The 'substantial evidence' standard of review can be roughly translated to mean 'is the determination unreasonable?'" *Thai Plastic Bags Indus. Co. v. United States*, 37 CIT __, __, 904 F. Supp. 2d 1326, 1329 (2013) (citing *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006).

## DISCUSSION

Unlike the prior proceedings cited by Commerce, here the Department has not identified a particular depreciation methodology, class of fixed assets, or statement by the auditor in the Thai Fermentation statements that is questionable or unreliable.[1] The 28-page Thai Fermentation financial statements provided to Commerce have full English translations with the

---

[1] *See, e.g., Certain Cut-To-Length Carbon-Quality Steel Plate Products from Korea*, 64 Fed. Reg. at 73,206 (making adjustments to the reported depreciation expense because respondent had recently "departed from its historical useful life policy by aggressively extending asset lives, which resulted in a dramatic reduction in depreciation expenses.").

exception of two paragraphs in a footnote concerning fixed assets. App. to Fufeng's Rule 56.2 Mot. for J., ECF No. 35 at 80–102 (Mar. 13, 2014). There is no allegation that this minor oversight was intentional. Potentially mitigating the deficiency, there are full translations of notes explaining the methodology for depreciating fixed assets. *Id.* at 86–89 (Notes to Financial Statements 2.3, 2.5, and 3.6). Ultimately, while Commerce demonstrates that the Thai Fermentation statements might be *more* reliable with a complete translation of footnote 12, Commerce has not made the case that the statements are *un*reliable, warranting their wholesale rejection. By contrast, the Thai Ajinomoto financial statements selected by Commerce are in fact, as opposed to hypothetically, unreliable, due to evidence of countervailable subsidies. *See* I&D Mem. cmt. 2.

Commerce's general discussion about depreciation does not comply with the court's instruction to make "a fact-sensitive finding that the Thai Fermentation statements are missing 'vital' information." *See CP Kelco III*, 41 CIT at __, 211 F. Supp. 3d at 1345. Of course, the court understands that it is difficult for Commerce to explain the significance of information it does not have. Therefore, on a record containing reliable alternative data, Commerce might reasonably reject financial statements because those statements are missing narrative information concerning depreciation. But Commerce must use the "best available information" on *this* record. 19 U.S.C. § 1677b(c)(1).

To be sure, "[t]he Court's role . . . is not to evaluate whether the information Commerce used was the best available, but rather whether a reasonable mind could conclude that Commerce chose the best available information." *Catfish Farmers of Am. v. United States*, 33 CIT 1258, 1273, 641 F. Supp. 2d 1362, 1377 (2009) (citation and internal quotation marks omitted). Commerce has the discretion to choose from among reasonable alternative determinations and

the court will not supplant the Department's discretion with its own. However, the court does not find that the record supports more than one reasonable result. As long as the Thai Fermentation statements remain untranslated, any deficiency in those statements is too speculative and insignificant, when compared to that of the Thai Ajinomoto statements. At bottom, the record does not contain substantial evidence supporting Commerce's decision to discard the Thai Fermentation statements from this particular record.[2]

Moreover, "the methodology used by Commerce" to select financial statements is not reasonably calculated to "establish[] the antidumping margins as accurately as possible." *See Shakeproof Assembly Components, Div. of Ill. Tool Works, Inc. v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001). Commerce admits that it has a "general practice [] to disregard financial statements that show that a company has received countervailable subsidies" when the record contains "other sufficiently reliable and representative data." I&D Mem. cmt. 2. Therefore, Commerce could have disregarded the Thai Ajinomoto financial statements because of the countervailable subsidies, leaving the Thai Fermentation statements as the only "sufficiently reliable" statements on the record.[3] Instead, the Department invoked the identical practice for

---

[2] Fufeng insists that Commerce's position is also inconsistent with its general practice to not "go behind the numbers" of financial statements prior to using those statements for surrogate values. Fufeng Comments on Third Redetermination 14, ECF No. 159 (citing *Multilayered Wood Flooring from China*, 76 Fed. Reg. 64,318 (Dep't Commerce Oct. 18, 2011) (final determ.)). However, Commerce is not seeking to go "behind," *i.e.* outside, the Thai Fermentation financial statements. Rather, consistent with practice, Commerce seeks information *within* the statements it insists may call into question the reliability of other information in those same statements. *Cf. Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from China*, 76 Fed. Reg. 3,086 (Dep't Commerce Jan. 19, 2011) (final results) and accompanying Issues & Decision Mem. cmt. 16 ("[T]he Department will only seek information from within the surrogate financial statements in determining the appropriateness of including an item in the financial ratio calculation, and will not go 'behind' the statement.").

[3] Indeed, the Department has previously found incomplete data to be sufficiently reliable. *See, e.g., Ass'n of Am. Sch. Paper Suppliers v. Unites States*, 35 CIT __, __, 791 F. Supp. 2d 1292, 1299 (2011).

incomplete statements. This leaves the court with the distinct impression that Commerce has created an arsenal of "practices" that allow it to the craft the record to fit a pre-determined outcome. The court will not sanction this.

Unlike proceedings where entire sections, pages, or auditors' reports are actually missing from financial statements,[4] any mystery surrounding the Thai Fermentation statements is essentially of the Department's own making. Here, Commerce is—and has always been—in possession of the "missing" information, a mere *ten lines* of text in a 28-page document. Moreover, Commerce has had many opportunities to solicit a translation of the paragraphs or to translate the paragraphs itself, as it has done before. *See, e.g.*, *Diamond Sawblades and Parts Thereof from China*, 81 Fed. Reg. 38,673 (Dep't Commerce June 14, 2016) (final results) and accompanying Issues & Decision Mem. cmt 14. Instead, Commerce has inexplicably dedicated significant resources to avoid this common sense course of action, with disingenuous reference to deadlines and closed records.[5]

In light of the embarrassingly lengthy history of this case, the court will not provide the Department any further room to maneuver. Unfortunately, the court has no reasonable expectation that Commerce would provide an even-handed analysis of the available data on the record if given the opportunity, again, to exercise its discretion. Therefore, on remand, the

---

[4] *See, e.g.*, *Mid Continent Steel & Wire, Inc. v. United States*, 41 CIT __, __, 203 F. Supp. 3d 1295, 1313 (2017) (finding that substantial evidence supported Commerce's decision to summarily discard financial statements that left untranslated the audit report, several financial statements, and all but one footnote).

[5] The court suspects that the parties know the content of the untranslated text, so Commerce's unwillingness to place a translation on the record speaks volumes. If the translated text in fact rendered Thai Fermentation's reported depreciation figures unreliable, the Department likely would have exercised its broad discretion to re-open and supplement the record.

Department is free to either translate the two paragraphs or leave them as is. Regardless, Commerce must use the Thai Fermentation statements to calculate surrogate financial ratios.

## **CONCLUSION AND ORDER**

For the reasons discussed above, the court again remands Commerce's selection of the Thai Ajinomoto financial statements over the Thai Fermentation financial statements.

Upon consideration of all papers and proceedings herein, it is hereby:

**ORDERED** that the *Third Remand Results* are remanded to Commerce for redetermination in accordance with this Opinion and Order; it is further

**ORDERED** that Commerce must issue a redetermination in accordance with this Opinion and Order that is in all respects supported by substantial evidence, in accordance with law, and supported by adequate reasoning; it is further

**ORDERED** that Commerce shall recalculate Fufeng's weighted-average dumping margins using surrogate financial ratios derived from the Thai Fermentation financial statements; it is further

**ORDERED** that Commerce shall have ninety (90) days from the date of this Opinion and Order in which to file its remand redetermination, which shall comply with all directives in this Opinion and Order; that the Plaintiff and Defendant-Intervenor shall have thirty (30) days from the filing of the Remand Redetermination in which to file comments thereon; and that the Defendant shall have thirty (30) days from the filing of Plaintiff and Defendant-Intervenor's comments to file comments.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: April 5, 2018
New York, New York