Slip Op. 20-62

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CP KELCO US, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br> and <br><br> NEIMENGGU FUFENG BIOTECHNOLOGIES CO., LTD., and SHANDONG FUFENG FERMENTATION, CO., LTD., <br><br> Defendant-Intervenors. | Before: Richard W. Goldberg, Senior Judge <br><br> Court No. 13-00288 |

## OPINION

[In compliance with the mandate issued by the Court of Appeals for the Federal Circuit, affirming the third redetermination of Commerce on an antidumping duty investigation on xanthan gum from the People's Republic of China.]

Dated: May 8, 2020

*Matthew L. Kanna*, *Nancy A. Noonan* and *Leah N. Scarpelly*, Arent Fox LLP, of Washington, DC, for plaintiff.

*Alexander O. Canizares*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With him on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director. Of counsel on the brief was *Brandon J. Custard*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, Washington, DC.

*Ned H. Marshak, Jordan C. Kahn*, and *Brandon Petelin*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC for defendant-intervenors.

Goldberg, Senior Judge:  Before the court is the mandate issued by the United States Court of Appeals for the Federal Circuit ("Court of Appeals") in *CP Kelco U.S., Inc. v. United States*, 949 F.3d 1348 (Fed. Cir. 2020) ("*Kelco*").  CAFC Mandate in Appeal No. 2019-1207 (Apr. 2, 2020), ECF No. 184.  *Kelco* affirmed in part and reversed in part the judgments entered by this Court in *CP Kelco U.S., Inc. v. United States*, 39 CIT __, 2015 WL 1544714 (2015) ("*Kelco I*") and *CP Kelco U.S., Inc. v. United States*, 42 CIT __, 2018 WL 4469912 (2018) ("*Kelco V*").  In *Kelco*, the Court of Appeals affirmed this Court's decision in *Kelco I* to uphold the decision of the International Trade Administration, U.S. Department of Commerce ("the Department" or "Commerce) to treat *Xanthomonas campestris* ("*X. campestris*") as an asset and reversed this Court's decision in *Kelco V* regarding the Department's use of certain financial statements to calculate the surrogate financial ratios.  *Kelco*, 949 F.3d at 1359.  The Court of Appeals held that this Court must "reinstate Commerce's determination to use the Thai Ajinomoto financial statements to calculate the surrogate financial ratios."  *Id*.  The court issues this opinion to explain how it will comply with the mandate and enter judgment accordingly.

## I.   BACKGROUND

The court's prior opinions in this action provide a detailed procedural background for this case, summarized briefly herein where relevant.  See *Kelco I*, 39 CIT at __, 2015 WL 1544714, at *2; *CP Kelco U.S., Inc. v. United States*, 40 CIT __, __, 2016 WL 1403657, at *1–4 (2016) ("*Kelco II*"); *CP Kelco U.S., Inc. v. United States*, 41 CIT __, __, 211 F. Supp. 3d 1338, 1339–41 (2017) ("*Kelco III*"); *CP Kelco U.S., Inc. v. United States*, 42 CIT __, __, 2018 WL 1703143, at *1–2 (2018) ("*Kelco IV*")*; Kelco V*, 42 CIT at __, 2018 WL 4469912, at *1–2.  In this litigation, plaintiff CP Kelco U.S. Inc. ("CP Kelco"), a domestic manufacturer of xanthan gum, contested the final determination ("Final Determination") of Commerce concluding an investigation of

xanthan gum from the People's Republic of China ("China"). *See* Compl. 1–2 (Sept. 18, 2013), ECF No. 10; *Xanthan Gum from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 78 Fed. Reg. 33,351 (Dep't Commerce June 4, 2013) ("*Final Determination*"), *amended by* 78 Fed. Reg. 43,143 (Dep't Commerce July 19, 2013) ("*Am. Final Determination*"); *see also* Issues and Decision Memorandum for the Final Determination of the Antidumping Duty Investigation of Xanthan Gum from the People's Republic of China (Dep't Commerce May 28, 2013) ("Issues & Decision Mem."). The investigation covered the period of October 1, 2011 through March 31, 2012. Compl. 1; *Final Determination*, 78 Fed. Reg. at 33,352. As a result of this investigation, Commerce originally assigned an estimated weighted-average dumping margin of 12.90% to Neimenggu Fufeng Biotechnologies Co., Ltd. and Shandong Fufeng Fermentation Co., Ltd. (collectively, "Fufeng"), one of the selected mandatory respondents. Compl. 3, 8; *Am. Final Determination*, 78 Fed. Reg. at 43,144.

In its first redetermination, Commerce reduced the margin to 8.69% for Fufeng because Commerce changed the way it calculated energy allocation at a Fufeng production plant, a change in calculation that has not been appealed and is not at issue. Final Results of Redetermination Pursuant to Court Remand Order in *Kelco I* 20 (July 28, 2015), ECF No. 83 ("First Redetermination"). Commerce initially used financial statements from Ajinomoto (Thailand) Co., Ltd. ("Thai Ajinomoto") to calculate the surrogate financial ratios, *see* First Redetermination 17–19; Final Results of Redetermination Pursuant to Court Remand Order in *Kelco II* 18 (Aug. 22, 2016), ECF No. 109 ("Second Redetermination"); Final Results of Third Redetermination Pursuant to Court Remand Order in *Kelco III* 11 (May 15, 2017), ECF No. 126 ("Third Redetermination"); Voluntary Redetermination Pursuant to Court Remand Order in *Kelco III* 13 (Sept. 18, 2017), ECF No. 157, but used financial statements from Thai

Fermentation Industry Ltd. ("Thai Fermentation") in its fourth redetermination, pursuant to this Court's order directing them to do so. Final Results of Fourth Redetermination Pursuant to Court Remand Order in *Kelco IV* 12 (July 5, 2018), ECF No. 169 ("Fourth Redetermination"). In *Kelco V*, this Court sustained Commerce's use of the Thai Fermentation financials to determine the appropriate surrogate margin, which resulted in a determination of a zero-percent margin. Fourth Redetermination 12; *Kelco V*, 42 CIT at __, 2018 WL 4469912, at *2–3.

CP Kelco appealed the Department's final determination regarding Commerce's decision to treat *X. campestris* as an asset, and appealed Commerce's selection of the Thai Fermentation financial statements for calculating its surrogate financial margin. The Court of Appeals sustained the Department's determination that *X. campestris* is an asset and reversed the court's rejection of the use of the Thai Ajinomoto financials to determine the surrogate ratios. *Kelco*, 949 F.3d at 1359.

### A. The Court of Appeals sustained Commerce's determination that *X. Campestris* was an asset, not a direct material input

Commerce determined that, due to its regenerative properties, bacteria used in xanthan gum production, *X. campestris*, is an asset and not a direct material input. Issues & Decision Mem. 35–37. In *Kelco I*, this Court sustained this finding of Commerce, stating it was supported by substantial evidence on the record and was in accordance with law. *Kelco I*, 39 CIT at __, 2015 WL 1544714, at *2–5. This Court noted that Commerce uses surrogate financial ratios to account for production inputs that cannot be wholly attributed to a finite batch of subject merchandise, and that these surrogate ratios account for asset costs through depreciation or amortization figures. *Id.* at __, 2015 WL 1544714, at *2–3. In the case of *X. campestris*, because the bacterial colony self-regenerates and is therefore not "used up" in the production of xanthan gum, and because respondents such as Fufeng acquired *X. campestris* via a one-time

payment before the period of investigation even began, the cost of the bacteria "was not attributable to any discrete batch of xanthan gum" and therefore was best categorized as an asset instead of as a factor of production. *Id.* at __, 2015 WL 1544714, at *3.

    **B. The Court of Appeals rejected the use of Thai Fermentation financials, and reinstated the Department's use of the Thai Ajinomoto financials to determine the appropriate surrogate ratio for the antidumping duty calculation**

In its Final Determination, Commerce decided to select Thailand as the surrogate country, Issues & Decision Mem. 7–12, and reviewed the financial statements of different Thai producers of MSG and/or lysine, including Thai Ajinomoto and Thai Fermentation, in order to determine which set of financial statements should be used to calculate the appropriate surrogate ratios. *Id.* at 12. Ultimately, Commerce selected Thai Ajinomoto's financial statements to value factory overhead, selling, general, and administrative expenses, as well as profit. *Id.* at 14–15. Commerce did so because the Thai Ajinomoto financial statements, though they contained evidence of subsidies, were the only ones that were complete; the Thai Fermentation financial statements lacked complete English translations. *Id.* at 16. In *Kelco I*, this Court remanded the Department's decision to use the Thai Ajinomoto financial statements for further explanation because Commerce did not address "why the weakness of the Thai Fermentation statements— incompleteness—was worse than the weakness of the Thai Ajinomoto statements—evidence of subsidies." *Id.* at __, 2015 WL 1544714, at *6.

In its First Redetermination, Commerce once again decided to use Thai Ajinomoto's financial documents, explaining that although both financial documents had their flaws, Commerce thought that incompletely translated financial statements were not a reliable source with which to calculate financial ratios, and that in contrast, Thai Ajinomoto's statements were "complete and reliable, and all parties to this proceeding have been afforded the opportunity to

comment on their full content." First Redetermination 11. In *Kelco II*, this Court once again directed that Commerce reconsider the financial statements, noting that Commerce did not "faithfully compare the financial statements side by side" and that Commerce now must "compare the Thai Ajinomoto and Thai Fermentation financial statements side by side in an evenhanded manner, evaluating the relative strengths and weaknesses of each . . . remanding will also allow the agency to cure the evidentiary defect in its financial-statement selection." *Kelco II*, 40 CIT at __, 2016 WL 1403657, at *5. In the alternative, this Court noted that Commerce might instead find that the Thai Fermentation statements were missing vital information, or Commerce could "put its resources towards explaining a change in its practice, from rejecting statements when they are missing vital information . . . to invariably rejecting any incomplete statements." *Id*. at __, 2016 WL 1403657, at *5 n.5.

In its Second Redetermination, Commerce once again decided that the Thai Ajinomoto financial statements were the best documents from which to calculate the margin and maintained its finding that the 8.69% margin was appropriate for Fufeng. Second Redetermination 9–18. Specifically, Commerce noted that although it did not, in all cases, reject incomplete financial statements in the past, it intended to do so as a matter of policy going forwards, unless there were no other financial statements left on the record. *Id*. at 7. In *Kelco III*, the court found that this new policy was not consistent with Commerce's statutory mandate, and that it led to an unreasonable outcome in this case. *Kelco III*, 41 CIT at __, 211 F. Supp. 3d at 1341. The court remanded to allow Commerce to "compare[] the Thai Ajinomoto and Thai Fermentation financial statements side by side" and noted that Commerce could alternatively reject the Thai Fermentation statements after making a finding that the two untranslated paragraphs in the footnote were "vital" to the Department's analysis of the financial data. *Id*. at __,

211 F. Supp. 3d at 1345.  Commerce was directed to specifically discuss what was missing from the Thai Fermentation financials, and how this missing information impeded Commerce's calculations.  Additionally, Commerce could either explore the effect subsidies had on the Thai Ajinomoto statements or make a fact-sensitive finding that the Thai Fermentation financial statements were missing vital information.  *Id*.

In its Third Redetermination, Commerce once again decided that the Thai Ajinomoto financial statements were the best documents from which to calculate the surrogate ratios, basing its decision on the finding that Thai Fermentation's financial statements were missing vital information.  Third Redetermination 6.  Specifically, Commerce stated that the two paragraphs for which translations were missing described the property, plant and equipment, which were fixed assets, and therefore Commerce was missing important information which was vital to calculating depreciation expenses, expenses that generally have a significant impact on a company's total overhead expenses.  *Id.* at 8–10.  In *Kelco IV*, this Court remanded the Department's selection of the Thai Ajinomoto financial statements over the Thai Fermentation statements and directed Commerce to use the Thai Fermentation financial statements to calculate the surrogate financial ratios.  *Kelco IV*, 42 CIT at __, 2018 WL 1703143, at *4–5.

In its Fourth Redetermination, under respectful protest, Commerce followed the court's order and used the Thai Fermentation financial statements to calculate the surrogate ratios.  Fourth Redetermination 9.  This altered the weighted-average dumping margin from 8.69% to 0% for Fufeng.  *Id.* at 12.  In *Kelco V*, this Court sustained this redetermination as supported by substantial evidence.  *Kelco V*, 42 CIT at __, 2018 WL 4469912, at *2–3.

## II. DISCUSSION

The only two questions before the Court of Appeals in *Kelco* were whether *X. campestris* is an asset or a direct material input, and whether the determination that the Department should use the Thai Fermentation financial statements to calculate the surrogate financial ratios was supported by substantial evidence. *Kelco*, 949 F.3d at 1356. Regarding whether *X. campestris* is an asset, the Court of Appeals conducted a similar analysis to that of this Court and Commerce and sustained the Department's use of *X. campestris* as an asset. *Id.* at 1358. However, regarding whether Commerce should use the Thai Fermentation or the Thai Ajinomoto financial statements for its surrogate calculations, the Court of Appeals determined that it was reasonable for Commerce to rely on the Thai Ajinomoto data and reversed this Court's decision on this issue. *Id.* at 1359.

Specifically, the Court of Appeals stated that in *Kelco III*, the court gave Commerce the option of either explicitly exploring the relative impact of the imperfection in the Thai Ajinomoto statements (evidence of subsidies), compared to that of the deficiencies of the Thai Fermentation financials (incompleteness), or that Commerce could make a fact-sensitive finding that Thai Fermentation statements were missing vital information. The Court of Appeals found that Commerce did the latter, making a fact-sensitive finding that the Thai Fermentation financials were missing vital information, and thus the Department did not need to do the side-by-side comparison. *Id.* Thus, "[a]t least as of this third redetermination by Commerce where it determined that the missing information in the untranslated financial statement was vital information and of 'critical importance,' Commerce had adequately explained the reasoning underlying its decision to use the Thai Ajinomoto financial statements rather than the Thai Fermentation financial statements." *Id*. For this reason, the Court of Appeals decided to

"reinstate Commerce's decision to use the Thai Ajinomoto financial statements to calculate the surrogate financial ratios." *Id*.

In its Third Redetermination, Commerce calculated a dumping margin of 8.69% for Fufeng by treating *X. campestris* as an asset, and by using data found in the Thai Ajinomoto financial statements. Therefore, this redetermination comports with the Court of Appeals decision in its entirety.

### III.   CONCLUSION

In light of the decision of the Court of Appeals upholding the Department's use of *X. campestris* as an asset, rather than a direct material input, and the decision of the Court of Appeals upholding the use of the Thai Ajinomoto financial statements to calculate surrogate value, the court will sustain the Department's Third Determination. Because there are no remaining issues in this case, the court will enter judgment accordingly.

Accordingly, the court sustains the Final Results of Third Redetermination Pursuant to Court Remand Order in *Kelco III*, (May 15, 2017), ECF No. 126.

   /s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: May 8, 2020
New York, New York